**Freddie BREEDLOVE, Petitioner,**

v.

**Dr. George J. BETO, Director, Texas Department of Corrections, Respondent.**

**Civ. A. No. 65–H–758.**

United States District Court
S. D. Texas,
Houston Division.

Aug. 30, 1967.

Charles G. Thrash, Jr., Houston, Tex., for petitioner.

Dunkin Sullivan, Asst. Atty. Gen. of Texas, Austin, Tex., for respondent.

## MEMORANDUM AND ORDER:

CONNALLY, Chief Judge.

The petitioner is a prisoner in the custody of the Texas Department of Corrections. He has made application to this Court for a writ of habeas corpus, attacking a conviction for murder with malice had in the 23rd Judicial District Court of Fort Bend County, Texas. Charles G. Thrash, Jr., Esq., a member of the bar of this Court, was appointed to represent the petitioner at his hearing held on August 14, 1967, and he has done so, well and effectively.

The petitioner raises a number of points which he contends entitle him to relief. In my judgment all are ancillary to his primary contention that his privately retained, and paid, counsel was grossly incompetent, to such an extent as to render his trial a farce and mockery of justice, and to result in a deprivation of his constitutional rights. The points he raises, whether couched as errors on the part of his counsel, or of the trial court, are as follows:

1. His attorney agreed with the district attorney that the colored members of the jury panel might be excused, and hence petitioner was tried to an all-white jury.

2. His counsel failed to object, or to call for a ruling by the trial court, as to the reference by the district attorney, in cross-examining petitioner, to a statement which petitioner had previously given to the officers, and which he now contends was involuntary.

3. His counsel failed to object to a question which the district attorney put to one of the law enforcement officers, which it is now contended was so prejudicial as to invalidate the trial.

4. His counsel should have negotiated with the district attorney looking toward a trade-out, whereby as result of a plea of guilty the district attorney would have recommended a sentence lesser than the one which petitioner received at the hands of the jury.

5. His counsel was remiss in failing to call character witnesses on petitioner's behalf.

A full evidentiary hearing was held at which both petitioner and his former counsel testified at length. Additionally, the record of the state court trial and various other records and affidavits have been received. The evidence is essentially without dispute.

■ The action well might be disposed of simply by the citation of Howard v. Beto, 375 F.2d 441 (5th Cir. 1967), where in dealing with a similar case wherein retained counsel had represented the petitioner the Court pointed out the distinction to be made between the lack of effective assistance of competent counsel, and being denied the right to have the effective assistance of competent counsel. After making the distinction, the Court notes:

"It is the latter that opens a judgment to challenge by habeas corpus. Here the attorneys' alleged incompetence cannot be imputed to the state (citing authorities)."

The same is true here. If there was incompetence of counsel, as petitioner contends, the attorney was of his own choosing and the state in no particular is responsible for any of his shortcomings.

I desire, however, to make some comment upon the points raised and hence do not dispose of the action solely on this basis.

■ With reference to the first point, it is undisputed that an agreement was made between the district attorney and the defense counsel to excuse all colored jurors. The record further shows that this was not a uniform practice, but one that was occasionally followed in the county where this trial was held. Both petitioner and his victim were negroes. The shooting, which is not denied, occurred at a negro dance hall and beer parlor in the early morning hours. The defense counsel has testified that he made the agreement thinking that it was to his client's best interests. This is based, no doubt, on what is generally regarded as a truism in this section of the country at least that, where a negro is charged with a crime of violence against a white person, white jurors normally will consider the case more serious than would colored jurors; but that where a negro is charged with a crime of violence against another of his race, white jurors are generally considered more sympathetic than are colored jurors. Whether this be true or not, it serves as a rational basis upon which counsel's decision may have been based.

The record reflects that in cross-examining the petitioner while testifying as a witness in his own behalf, the district attorney alluded to a statement of the defendant which apparently he held in his hand. Petitioner had testified that following the killing he had fled and had left the murder weapon with a friend. The district attorney inquired as to whether he had not made a statement that he had "hidden" the pistol. There was some colloquy between the attorney and the witness over use of the term "hidden". This statement was not offered in evidence, and no part of it was read to the jury. No contention was made at the time that it was involuntary. Defense counsel interposed the objection that the statement was not in evidence,

following which no further reference was made to it.

The record shows that a large crowd was present at the time of the shooting, and that it occurred in the presence of some 30 to 40 witnesses. The district attorney put a question to one of the officers who had investigated the offense substantially to this effect, "Has it not been your experience that when something like this happens (a shooting) and there are a bunch of niggers present, they will fly like birds?" No objection was made to the question. I fail to see how it caused harm to the petitioner.

 The defense which was offered, and to which the petitioner and an additional witness testified, was that of self-defense; that the deceased was advancing on petitioner with a drawn knife when petitioner shot him to death. While there was abundant evidence to the contrary which the jury saw fit to accept, the defense might not be characterized as frivolous. I have difficulty in seeing how the defense counsel may be condemned for failing to initiate negotiations looking to a plea of guilty. Either he or his client may well have had hopes or expectations of an acquittal. In a majority of habeas corpus cases coming to this court—as I suspect would have been the case here had this picture been reversed—the question is raised that a plea of guilty based on a trade-out was involuntary and constituted a deprivation of constitutional rights.

With reference to the failure to call character witnesses, the record is undisputed that petitioner had been charged with one or two offenses, but had never been convicted of a felony. Whether character witnesses could have been found, and if so, whether they would have improved upon this situation cannot now be determined.

■ Contrary to the contention that the trial was inherently unfair by reason of incompetence of his counsel, it is my view that petitioner's representation was adequate in all respects. His attorney had been a member of the bar for some two years. While this was his first criminal case tried to conclusion, he had represented a number of indigents by appointment of the Court and had an active civil practice. The questions raised neither singly nor collectively warrant the relief which petitioner seeks.

The application for habeas corpus is without merit and same should be and is hereby denied. The clerk will file this Memorandum and Order and furnish counsel of record with copies hereof.

The Court expresses its appreciation to Mr. Thrash for a careful investigation and scholarly presentation of the points raised, hampered as he undoubtedly was by complete lack of merit in the points which petitioner advanced.